## No. 14,500.

ZAMBONI ET AL. *v.* GRAHAM ET AL.

(88 P. [2d] '98)

Decided February 27, 1939.

Mr. GEORGE H. LERG, for plaintiffs in error.

Mr. J. F. SCHNEIDER, Mr. CHARLES H. HAINES, Mr. LUCIAN M. LONG, for defendants in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

DEFENDANTS in error, the Grahams, who are husband and wife, brought action against F. Zamboni and M. Zamboni, also husband and wife, and Henry Allen to enforce specific performance of an alleged oral contract and to compel the conveyance to them of five acres of land, which they contended they had purchased from Zamboni. Judgment below generally was for the Grahams, although the court decreed a conveyance of only one and nine-tenths acres for a consideration of $195, which has been deposited with the court. The action was dismissed as to Allen. We are disposed to consider and decide the matter on the application for a supersedeas in fairness to all concerned.

It appears from the record that sometime in the fall of 1934, the Grahams learned that Zamboni was the owner of 156 acres of mountain land along Vasquez Creek in Grand county. They were desirous of acquiring a small portion of this tract upon which they proposed to build a home and erect some cabins. Accordingly, they came to Denver where Zamboni lived, called upon him, advised him of their wishes, and inquired as to the price per acre and which he told them was $50. This price was satisfactory and, Graham alleges, he bargained for five acres, saying that he did not have that much money at the time, but was willing to make a down payment of $50. Zamboni declined the offer as made but suggested that the Grahams go back and build themselves a home on the land they desired to purchase, erect some cabins to help pay for the place, and they could give him the purchase price later. The Grahams acted upon this suggestion, expecting to pay the $250 at some future time. Apparently nothing was said concerning interest or taxes.

According to Zamboni's statement the arrangement was to be one of landlord and tenant relationship, the Grahams to pay rent, although he does not assert that there was any agreement as to the amount of rental.

No formal contract was ever executed and the only writing in evidence is a letter written to Graham by Zamboni's daughter, Mrs. Leech, at Zamboni's request, which is as follows:

"450 Decatur St.
"Denver Colo.
"Mar. 22, 1935.

"Mr. F. S. Graham:—

"Dear Friend:

"Father has ask me to answer your letter of the 19th.

"Father was to meet your husband; as before stated. I guess they were both waiting different places. To bad for each of them is the best way I can explain it.

"Father said for you not to worry about being troubled

while living in your home. You can continue living as usual. He would wait until your husband went to work and you both had the money to pay for a lease. He can not send you a lease before the payment. That isn't a business standard. But rest assured he will protect your rights. If any one bothers you ask them to see him.

"He is no robber; and does not need your home, for a home; or neither for a summer cabin. So it may be to your surprise that after your two yr. lease is up; and you have the money you folks can buy.

"He doesn't care who he sells too. If it doesn't break up the land to badly. But at that time he will be at West Portal in person; and see things for his self.

"I remain his daughter

"Mrs. W. R. Leech."

There is no question as to this letter being written, or its having been authorized by Zamboni. In the light of other testimony, it definitely indicates three things: 1. That the Grahams, acting in accordance with something Zamboni had told them did build a home on some of Zamboni's land. 2. That he agreed to protect their rights. 3. That any deal would be satisfactory to him if it did not "break up the land too badly."

Three principal defenses are urged to defeat the action: (a) That the alleged contract, if made, was so indefinite and uncertain that a suit for specific performance would not lie; (b) that the complaint failed to allege that plaintiffs were without "a speedy and adequate remedy at law," the same being a jurisdictional allegation; (c) that the so-called contract was in violation of the statute of frauds, being one for the sale of real estate and not reduced to writing. Section 8, c. 71, vol. 3, '35 C. S. A., C. L. §5107.

██ (a) Ordinarily, of course, equity will not decree specific performance of a contract where it is so indefinite and uncertain as to be incapable of being specifically enforced, but this rule does not deprive a court of the power and duty to effect an equitable adjustment between

litigants when it is admitted that both parties have some rights in the subject of the controversy. In this case it is obvious that money damages would be insufficient to compensate the Grahams for what they had built into, and what Zamboni acknowledges to be, their home. Pomeroy's Specific Performance (3d ed.) §§115-117.

(b) Substantially the same answer must be made to the defense that the complaint failed to allege that plaintiff has "no speedy and adequate remedy at law," and in addition we are of the opinion that the complaint satisfies the code requirements as to pleading. 21 C. J. 387.

(c) In view of the fact that the Grahams expended from $1,200 to $1,500 in labor and materials in building their home on the land in reliance on Zamboni's consent, we think it clearly apparent that there was sufficient part performance to overcome the defense of the statute of frauds. Sections 8 and 10, c. 71, '35 C. S. A.

As already indicated, the court decreed a conveyance of only 1.9 acres out of a total of 156 acres. There is no showing that "this would break up the land too badly," and the price of $100 an acre would certainly seem to be reasonable under all the circumstances.

It may be conceded, as the trial court pointed out, that there was no definite contract, as such, that could be specifically enforced in all particulars. Assuming there was agreement on the price of $50 per acre, there never was an agreement as to the amount of land to be sold. As noted, Zamboni admitted that the Grahams had acquired some rights that he was willing to protect, and it then was the court's problem to determine what those rights were and enforce them. It is not disputed that the Grahams in expending from $1,200 to $1,500 in the erection of their home did so in reliance upon Zamboni's promise; thus it would seem that the least the court could do was to decree to the Grahams the ground upon which the buildings were constructed, and this the court did. Zamboni has no ground for com-

plaint as to this part of the decree and so far as the price and amount of land is concerned, the Grahams are being penalized. They thought they had purchased five acres at $50 an acre; the court awarded them only 1.9 acres and fixed the price at $100 an acre; notwithstanding which they have accepted the court's judgment on the matter and assign no cross error.

Judgment affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE BURKE concur.